**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| COMMWORKS SOLUTIONS, LLC, | Civil Action No. 2:26-cv-00088 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| REALTEK SEMICONDUCTOR CORPORATION, | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant Realtek Semiconductor Corporation ("Realtek" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 6,832,249 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/6832249 |
| 2. | 7,177,285 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7177285, https://patentcenter.uspto.gov/applications/10961959 |
| 3. | 7,463,596x | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463596, https://patentcenter.uspto.gov/applications/11673513 |

|     | Patent No. | Reference |
| --- | --- | --- |
| 4. | 7,911,979x | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7911979, <br><br> https://patentcenter.uspto.gov/applications/12323399 |
| 5. | RE44,904x | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44904, <br><br> https://patentcenter.uspto.gov/applications/13171882 |
| 6. | 7,027,465x | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7027465, <br><br> https://patentcenter.uspto.gov/applications/10167986 |
| 7. | 6,891,807x | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6891807, <br><br> https://patentcenter.uspto.gov/applications/10341847 |
| 8. | 9,554,304x | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9554304, <br><br> https://patentcenter.uspto.gov/applications/14090760 |

2.      Plaintiff seeks monetary damages.

## PARTIES

3.      CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4.      On information and belief based upon public information, Defendant Realtek Semiconductor Corporation is a foreign company organized and existing under the laws of Taiwan and has a principal place of business at No. 2 Innovation Road II, Hsinchu Science Park, Hsinchu 300, Taiwan.

5.      On information and belief, Realtek has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with its products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

6.    CommWorks repeats and re-alleges the allegations in paragraphs 1-5 above as though fully set forth in their entirety.

7.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, 284, and 285, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.    Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, in the State of Texas and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

9.    Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, by contributing to and through its inducement of third parties, and offering its products or services, including those accused of infringement here, to customers and potential customers located in this District.

10.    Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District.  For example, upon information and belief, Defendant has placed its products into the stream of commerce *via* an established distribution channel, with the knowledge or understanding that such products are being sold in this judicial district and the State of Texas.  Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and

pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to residents and consumers.

11.     Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Eastern District of Texas, and Defendant has committed acts of infringement in the Eastern District of Texas, has conducted business in the Eastern District of Texas, and/or has engaged in continuous and systematic activities in the Eastern District of Texas.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

13.     Defendant has not contested the propriety of venue in this District for patent infringement actions. *See Xueshan Technologies Inc. v. Realtek Electronics Corporation*, 2:22-cv-00157-JRG-RSP, Dkt. No. 10, at ¶ 16 (E.D. Tex. Aug. 16, 2022); *Xueshan Technologies Inc. v. Realtek Electronics Corporation*, 2:23-cv-00091-JRG-RSP, Dkt. No. 13, at ¶ 16 (E.D. Tex. Aug. 1, 2023); *Winterspring Digital LLC v. Realtek Electronics Corporation*, 2:23-cv-00025-JRG-RSP, Dkt. No. 16 (E.D. Tex. Aug. 29, 2023) (Realtek filing motion to dismiss solely under Rule 12(b)(6)).

## THE ACCUSED PRODUCTS

14.     CommWorks repeats and re-alleges the allegations in paragraphs 1-13 above as though fully set forth in their entirety.

15.     Defendant uses, causes to be used, manufactures, provides, supplies, or distributes one

or more Realtek Systems-on-Chips (SoCs), and/or devices, including, but not limited to the "Accused Products," set forth below:

- Realtek SoCs and/or devices supporting **Wi-Fi Multimedia and 802.11-2007+** functionality (the "Realtek Wi-Fi Multimedia Products"), which include but are not limited to:

    o Realtek RTL8188EE,

    o RTL8188ETV,

    o RTL8711AM,

    o RTK AX1800 Router,

    o RTK AC1200 Mesh Router (WFA91995 - 10832713), and (WFA91995 - 9862509)), RTL8822BE 2T2R 802.11ac/abgn plus BT Combo Module ((WFA66634 - 10377538), (WFA66634 - 7145351), and (WFA66634 - 4389592)), RTL8821CE 1T1R 802.11ac/abgn plus BT Combo Module ((WFA67678 - 10184000), (WFA67678 - 7138585), and (WFA67678 - 4636778)), RTL8822CE 2T2R 802.11ac/abgn plus BT Combo Module ((WFA82873 - 9828260), (WFA82873 - 8296341), and (WFA82873 - 8190213)), RTL8723DE 1T1R 802.11bgn plus BT Combo Module ((WFA66894 - 7138705), and (WFA66894 - 4448502)), RTL8812BU 2T2R 802.11ac/abgn USB Adapter ((WFA67454 - 5085297) and (WFA67454 - 4587974)), RTL8197D+RTL8812AR+RTL8192CE 2T2R 802.11ac/a/b/g/n AP/Router ((WFA16991 - 4780045), (WFA16991 - 2572439), (WFA16991 - 2222531), (WFA16991 - 22025), (WFA16991 - 21998), (WFA16991 - 21517), and (WFA16991 - 18257)), RTL8812AE 2T2R 802.11ac/abgn module ((WFA60379 - 3127998) and (WFA60379 - 3017926)), RTL8723BS 1T1R 11bgn plus BT Combo Module (WFA58831 - 2666122), RTL8812AE 2T2R 802.11ac/a/b/g/n miniCard ((WFA16990

- 2201608), (WFA16990 - 2058884), (WFA16990 - 1922814), (WFA16990 - 1610065), (WFA16990 - 22024), (WFA16990 - 21997), and (WFA16990 - 18255)), RTL8192DU with DMP ((WFA16293 - 1826777), (WFA16293 - 17709) and (WFA16293 - 17344)), RTD1185PA01 STB with 2x2 11abgn WiFi ((WFA16570 - 5362038) and (WFA16570 - 17714)), RTL8723BE 1T1R 802.11bgn plus BT Combo Module ((WFA19789 - 1435755) and (WFA19789 - 21652)), RTL8192EE + RTL8761AU 2T2R 802.11bgn/BlueTooth Combo Module ((WFA19628 - 1266791) and (WFA19628 – 21463)), Wireless Display (WFA18569 - 20142), RTL8723AE 1T1R 802.11bgn plus BT combo NGFF Module (WFA17232 – 18551), RTL8188CE 1T1R 802.11bgn miniCard ((WFA17122 - 18416), ( WFA8581 - 11581), (WFA8581 - 8354) and (WFA8581 - 8122)), RTL8723AE 1T1R 802.11bgn plus BT combo miniCard ((WFA17120 - 18414) and (WFA13248 - 13671)), RTL8192DE 2T2R 802.11abgn Dualband PCI-E miniCard ((WFA10077 - 17708), (WFA10077 - 17508), (WFA10077 - 17388), (WFA10077 - 16975), (WFA10077 - 10969), (WFA10077 - 9896)  and (WFA12202 - 12373)), RTL8723AS 1T1R 802.11bgn plus BT combo miniCard (WFA14135 - 14671), RTL8192CU 2T2R 802.11bgn USB2.0 Dongle((WFA12160 – 12317), (WFA9273 - 8939) and (WFA10299 – 10146)), RTL8192CE 2T2R 802.11bgn miniCard ((WFA10084 – 11956), (WFA10084 - 9949), (WFA10084 - 9904), (WFA8643 - 8355) and (WFA8643 - 8199)), RTL8196C+RTL8192DR 802.11abgn 2T2R AP/Router (WFA10772 – 10694), RTL8188CUS 1T1R 802.11bgn USB2.0 Slim Module (WFA10076 - 9895), RTL8188CEBC8 1T1R 802.11bgn plus BT combo miniCard (WFA9718 - 9443), RTL8188SU 1T1R 802.11bgn USB2.0 Module (WFA9720 – 9445), RTL8188CUS

1T1R 802.11bgn USB2.0 Dongle ((WFA8932 - 8938) and (WFA8932 - 8526)), RTL8196C+RTL8192CE 2T2R 802.11bgn AP/Router (WFA8994 - 8604), RTL8196C+RTL8188RE 1T1R 802.11bgn AP/Router (WFA8851 - 8438), RTL8188CEBC4 1T1R 802.11bgn plus BT combo miniCard (WFA8823 - 8408), RTL8191SU 802.11bgn USB2.0 miniCard (WFA8479 - 8007), RTL8189ES, RTL8811CU, and RTL8812AU.

- Realtek devices/chips supporting **Wi-Fi Protected Setup ("WPS")** functionality (the "Realtek WPS Products") which include but are not limited to:

  o Realtek RTL8188EE,

  o RTL8711AM, RTL8822BE 2T2R 802.11ac/abgn plus BT Combo Module ((WFA66634 - 10377538), (WFA66634 - 7145351), and (WFA66634 - 4389592)), RTL8821CE 1T1R 802.11ac/abgn plus BT Combo Module ((WFA67678 - 10184000), (WFA67678 - 7138585), and (WFA67678 - 4636778)), RTL8822CE 2T2R 802.11ac/abgn plus BT Combo Module ((WFA82873 - 9828260) and (WFA82873 – 8296341)), RTL8723DE 1T1R 802.11bgn plus BT Combo Module ((WFA66894 - 7138705) and (WFA66894 - 4448502)), RTL8723BS 1T1R 11bgn plus BT Combo Module (WFA58831 - 2666122), RTL8812AE 2T2R 802.11ac/a/b/g/n miniCard ((WFA16990 - 2201608), (WFA16990 - 2058884), (WFA16990 - 1922814), and (WFA16990 - 1610065)), RTL8192DU with DMP ((WFA16293 - 1826777), (WFA16293 - 17709), and (WFA16293 - 17344)), RTD1185PA01 STB with 2x2 11abgn WiFi ((WFA16570 - 5362038) and (WFA16570 - 17714)), RTL8723BE 1T1R 802.11bgn plus BT Combo Module (WFA19789 - 1435755), RTL8192EE + RTL8761AU 2T2R 802.11bgn/BlueTooth Combo Module (WFA19628 - 1266791),

Wireless Display RTK001 (WFA18569 - 20142), RTL8188CE 1T1R 802.11bgn miniCard ((WFA17122 - 18416), (WFA8581 - 11581), (WFA8581 - 8354), and (WFA8581 - 8122)), RTL8723AE 1T1R 802.11bgn plus BT combo miniCard ((WFA17120 – 18414) and (WFA13248 – 13671)), RTL8192DE 2T2R 802.11abgn Dualband PCI-E miniCard ((WFA10077 - 17708), (WFA10077 - 17508), (WFA10077 - 17388), (WFA10077 - 16975), (WFA10077 - 10969), (WFA10077 - 9896), and (WFA12202 - 12373)), RTL8723AS 1T1R 802.11bgn plus BT combo miniCard (WFA14135 - 14671), RTL8192CU 2T2R 802.11bgn USB2.0 Dongle ((WFA12160 - 12317), (WFA9273 - 8939), and (WFA10299 – 10146)), RTL8192CE 2T2R 802.11bgn miniCard ((WFA10084 – 11956), (WFA10084 - 9949), (WFA10084 - 9904), (WFA8643 - 8355), and (WFA8643 - 8199)), RTL8196C+RTL8192DR 802.11abgn 2T2R AP/Router (WFA10772 – 10694), RTL8188CUS 1T1R 802.11bgn USB2.0 Slim Module (WFA10076 - 9895), RTL8188CEBC8 1T1R 802.11bgn plus BT combo miniCard (WFA9718 - 9443), RTL8188CUS 1T1R 802.11bgn USB2.0 Dongle ((WFA8932 - 8938) and (WFA8932 - 8526)), RTL8196C+RTL8192CE 2T2R 802.11bgn AP/Router (WFA8994 - 8604), RTL8196C+RTL8188RE 1T1R 802.11bgn AP/Router (WFA8851 - 8438), RTL8188CEBC4 1T1R 802.11bgn plus BT combo miniCard (WFA8823 - 8408), RTL8191SU 802.11bgn USB2.0 miniCard (WFA8479-8007), RTL8710CM, RTL8715Ax, RTL8721DM, RTL8711AF, RTL8195AM, RTL8710BN, RTL8720CM, and RTL8735BDM.

- Realtek systems and devices supporting **Wi-Fi Mesh** functionality (the "Wi-Fi Mesh Products") which include but are not limited to:

  o Realtek          Wi-Fi          7          solution          (BE3600-

(RTL8198E/RTL8932AR/RTL8902AR/RTL8221B)); and

    o  RTL8197F/RTL8198F.

- Realtek chips with IEEE 802.3ah support (the "IEEE 802.3ah Products") which include but are not limited to:

    o  Realtek RTL9301,

    o  RTL9311,

    o  CS8022, and

    o  RTL8393M-VC-CG.

- Realtek chips and/or devices with ITU-T G.984 and/or ITU-T G.9807.1 functionality (the "ITU-T Products"), which include but are not limited to:

    o  The RTL9601 series (e.g., RTL9601B, RTL9601CI, and RTL9601D),

    o  RTL9602 series, and

    o  RTL9603 series.

16.    On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described herein.

17.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,832,249

18.    CommWorks repeats and re-alleges the allegations in paragraphs 1-17 above as though fully set forth in their entirety.

19.    For purposes of this Count I, the Accused Products first include Realtek chips and/or devices with IEEE 802.3ah support, including, but not limited to, the Microchip PM5451 HyPHY-AXS OTN Processor, PM5441 DIGI-60G OTN Processor, PM5456 HyPHY-10Gflex OTN

Processor, PM5450 HyPHY-20Gflex OTN Processor, PM5440 DIGI-120G OTN Processor, Router PHY devices (PM5992, PM5993, PM5984, and PM5985), PM5442, PM5337, VSC8552, VSC8504, VSC8562, VSC8572, VSC8512, VSC8582, VSC8564, VSC8574, VSC8575, VSC8584, VSC6817, PM5426 HyPHY-10G, VSC7416, VSC7418, VSC7438, VSC7464, VSC7468, VSC7430, VSC7435, VSC7436, VSC7437, PM5420 HyPHY-20G, and VSC8662 (the "802.3ah Accused Products").

20.    For purposes of this Count I, the Accused Products also include Microchip chips with ITU-T G.984 and/or ITU-T G.9807.1 functionality, including, as a non-limiting example, the PAS5211, and the PAS740x GPON ONT SoC Device Family (PAS7400B, PAS7401B, PAS7401BV) (the "ITU-T Accused Products").

21.    The USPTO duly issued U.S. Patent No. 6,832,249 (the "'249 patent") on December 14, 2004, after full and fair examination of Application No. 09/860,801, which was filed May 18, 2001. The '249 patent is entitled "Globally Accessible Computer Network-Based Broadband Communication System with User-Controllable Quality of Information Delivery and Flow Priority."

22.    CommWorks owns all substantial rights, interest, and title in and to the '249 patent, including the sole and exclusive right to prosecute this action and enforce the '249 patent against infringers and to collect damages for all relevant times.

23.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '249 patent.

24.    The claims of the '249 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. At the time of the invention, millions of Internet

users being online simultaneously, thereby causing congestion (too many users) and latency (long pauses and delays), presented a difficult bandwidth load management challenge. '249 patent at 1:32-34, 2:34-36. No conventional routing system existed that avoided the congestion and best effort delivery methods then used by the Internet. *Id.* at 2:8-10. Conventional routing systems relating to multiple OSI layers also did not consistently ensure quality of service. *Id.* at 6:53-63. The invention of the '249 patent improved upon the conventional services delivery systems by enabling quality of service control by content providers, Application Service Providers (ASPs), ISPs, and, by extension, their customers. *Id.* at 3:60-63. Additional improvements over the conventional services delivery systems afforded by the invention of the '249 patent included bridging the gaps between the layers of the OSI reference model; ensuring more control by users over the priority of their information flow; more control by network administrators over the congestion of their networks; and more control by content providers over costs and the experiences they provide to their users. *Id.* at 3:65-4:2, 6:53-63. Defendant has directly infringed the '249 patent by making, using, offering to sell, selling, and/or importing the 802.3ah and ITU-T Accused Products identified above.

25.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 11 and 38 of the '249 patent, as detailed in <u>Exhibits A-1</u> and <u>A-2</u> (Evidence of Use Regarding U.S. Patent No. 6,832,249).

26.     Defendant has infringed one or more claims of the '249 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the 802.3ah Accused Products and the ITU-T Accused Products identified above.

27.     For example, as detailed in Exhibit A-1, Defendant has infringed at least claim 11 of the '249 patent by making, using, offering to sell, selling, and/or importing the 802.3ah Accused Products, which perform a method for providing broadband communications over a multi-layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein, comprising: monitoring at least one OSI reference model layer functioning in the multi-layered network; determining that a quality of service event has occurred in the multilayered network; determining that the quality of service event occurred at a layer N in the OSI reference model; responding to the quality of service event in the multi-layered network by changing network provisioning at a layer less than N; and signaling that the network provisioning at the layer less than N has been changed. *Id.*

28.     For example, as detailed in Exhibit A-2, Defendant has infringed at least claim 38 of the '249 patent by making, using, offering to sell, selling, and/or importing the ITU-T Accused Products, which include a system for providing broadband communications, comprising: a multi layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein; a network monitor coupled to the multi-layered network, wherein the network monitor is adapted to: monitor at least one OSI reference model layer functioning in the multi layered network; determine that a quality of service event has occurred in the multi-layered network; and determine that the quality of service event occurred at layer N in the OSI reference model; and a network controller coupled to the multi-layered network and the network monitor, wherein the network controller is adapted to: respond to the quality of service event in the multi layered network by changing the network provisioning at a layer less than N. *Id.*

29.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,177,285

30.     CommWorks repeats and re-alleges the allegations in paragraphs 1-29 above as though fully set forth in their entirety.

31.     For purposes of this Count II, the Accused Products are Realtek chips, SoCs, and/or devices supporting WPS functionality, including, without limitation, the Realtek WPS Products (the "WPS Accused Products").

32.     The USPTO duly issued U.S. Patent No. 7,177,285 (the "'285 patent") on February 13, 2007, after full and fair examination of Application No. 10/961,959, which was filed October 8, 2004.  The '285 patent is entitled "Time Based Wireless Access Provisioning."

33.     CommWorks owns all substantial rights, interest, and title in and to the '285 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

34.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '285 patent.

35.     The claims of the '285 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.  The written description of the '285 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.     For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then-existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '285 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

37.     The invention of the '285 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '285 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49.  The invention of the '285 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '285 patent was not conventional at the

time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection, and a transceiver were not conventional (or even available) at the time of the invention.

38.    Defendant has directly infringed one or more claims of the '285 patent by making, using, offering to sell, selling, and/or importing the WPS Accused Products.

39.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '285 patent, as detailed in **Exhibit B** (Evidence of Use Regarding U.S. Patent No. 7,177,285).

40.    Defendant has infringed one or more claims of the '285 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States WPS compatible devices, such as the Realtek WPS Products.

41.    For example, as detailed in Exhibit B, Defendant has infringed at least claim 1 of the '285 patent by making, using, offering to sell, selling, and/or importing the WPS Accused Products, which perform a process for provisioning between a wireless device and a network.  The process for provisioning comprises the step of tracking an operating parameter of the wireless device within a service area, wherein the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device.  *Id.* The process for provisioning further comprises the step of initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval.  *Id.*

42.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 7,463,596</u>**

43.     CommWorks repeats and re-alleges the allegations in paragraphs 1-42 above as though fully set forth in their entirety.

44.     For purposes of this Count III, the Accused Products are the WPS Accused Products identified in Count II.

45.     The USPTO duly issued U.S. Patent No. 7,463,596 (the "'596 patent") on December 9, 2008, after full and fair examination of Application No. 11/673,513, which was filed on February 9, 2007.  The '596 patent is entitled "Time Based Wireless Access Provisioning."

46.     CommWorks owns all substantial rights, interest, and title in and to the '596 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

47.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '596 patent.

48.     The claims of the '596 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

49.     The written description of the '596 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

50.     For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then-existent systems for provisioning access to a network were impractical, such as for wireless devices that lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '596 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

51.     The invention of the '596 patent improved upon then-existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process— "a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '596 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:42-49.  The invention of the '596 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:50-58.  Moreover, the structure of the devices described in the '596 patent was not

conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

52.    Defendant has directly infringed one or more claims of the '596 patent by making, using, offering to sell, selling, and/or importing the WPS Products identified above.

53.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '596 patent, as detailed in <u>Exhibit C</u> to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,463,596).

54.    Defendant has infringed one or more claims of the '596 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup, including the WPS Accused Products.

55.    For example, as detailed in <u>Exhibit C</u>, Defendant, using the WPS Accused Products, has infringed at least claim 1 of the '596 patent by making, using, offering to sell, selling, and/or importing the Realtek WPS Products, which perform a process for associating devices.  The process for associating devices comprises the step of tracking an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device.  *Id.*  The process for associating devices further comprises the step of automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval.  *Id.*

56.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 7,911,979</u>

57.     CommWorks repeats and re-alleges the allegations in paragraphs 1-56 above as though fully set forth in their entirety.

58.     For purposes of this Count IV, the Accused Products are the WPS Accused Products identified in Count II.

59.     The USPTO duly issued U.S. Patent No. 7,911,979 (the "'979 patent") on March 22, 2011, after full and fair examination of Application No. 12/323,399, which was filed on November 25, 2008.  The '979 patent is entitled "Time Based Access Provisioning System And Process."  A Certificate of Correction was issued on July 19, 2011.

60.     CommWorks owns all substantial rights, interest, and title in and to the '979 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

61.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '979 patent.

62.     The claims of the '979 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

63.     The written description of the '979 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

64.    For example, at the time of the invention wireless access to data networks was not yet conventional.  Then-existent systems for provisioning access to a network were impractical, such as for wireless devices that lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '979 patent at col. 3:19-31.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:32-41.

65.    The invention of the '979 patent improved upon then-existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:42-46.  The invention of the '979 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:47-53.  The invention of the '979 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.

*Id.* at col. 3:54-62.  Moreover, the structure of the devices described in the '979 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

66.    Defendant has directly infringed one or more claims of the '979 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the WPS Accused Products identified above.

67.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '979 patent, as detailed in Exhibit D to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,911,979).

68.    Defendant has infringed one or more claims of the '979 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Realtek WPS Products.

69.    For example, as detailed in Exhibit D, Defendant, using the WPS Accused Products, has infringed at least claim 1 of the '979 patent by making, using, offering to sell, selling, and/or importing the WPS Accused Products, which perform a provisioning process performed by a provisioning system having provisioning logic.  The provisioning process performed comprises tracking, by the provisioning logic, an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device.  *Id.*  The provisioning process performed in the WPS

Accused Products further comprises sending a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval. *Id.*

70. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: <u>INFRINGEMENT OF U.S. PATENT NO. RE44,904</u>

71. CommWorks repeats and re-alleges the allegations in paragraphs 1-70 above as though fully set forth in their entirety.

72. For purposes of this Count V, the Accused Products are Realtek chips and/or devices and/or software supporting Wi-Fi Multimedia and 802.11-2007+ functionality, including, for example, the Realtek Wi-Fi Multimedia Products (the "Wi-Fi Multimedia Accused Products").

73. The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014. The '904 patent is entitled "Method For Contention Free Traffic Detection."

74. CommWorks owns all substantial rights, interest, and title in and to the '904 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

75. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

76. The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network

provisioning systems.

77.     The written description of the '904 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

78.     For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all." '904 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outermost headers, until the right field in the header had been found. *Id.* at col. 1:63-2:2. This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols. *Id.* at col. 2:5-8. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge. *Id.* at col. 2:8-14. Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP). *Id.* Further, then-existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:20-25.

79.     The invention of the '904 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need for complex processing making it possible to execute the method in a low cost and possibly low performance AP. *Id.* at col. 2:29-32, 3:2-4, 3:52-53. The methods of the

invention of the '904 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:62-65. The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 3:5-8, 3:14-21. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:22-31.

80.    Defendant has directly infringed one or more claims of the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Wi-Fi Multimedia Accused Products identified above.

81.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '904 patent, as detailed in <u>Exhibit E</u> to this Complaint (Evidence of Use Regarding U.S. Patent No. RE44,904).

82.    Defendant, using the Wi-Fi Multimedia Accused Products, has infringed one or more claims of the '904 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia and/or 802.11-2007+ compatible chips, such as the Realtek Wi-Fi Multimedia Products.

83.    For example, as detailed in <u>Exhibit E</u>, Defendant, using the Wi-Fi Multimedia Accused Products, has infringed at least claim 1 of the '904 patent by performing a method comprising extracting a bit pattern from a predetermined position in a frame. The method further comprises

comparing said extracted bit pattern with a search pattern. *Id.* The method further comprises identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern. *Id.* The method further comprises forwarding said received frame to a high priority queue in case said frame is detected to be a high priority frame during a special period for sending priority traffic. *Id.* The method further comprises adjusting the duration of the special period for sending priority traffic according statistic information regarding sent priority frames. *Id.*

84.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,027,465

85.    CommWorks repeats and re-alleges the allegations in paragraphs 1-84 above as though fully set forth in their entirety.

86.    For purposes of this Count VI, the Accused Products are the Wi-Fi Multimedia Accused Products identified in Count V.

87.    The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986, which was filed on June 11, 2002. The '465 patent is entitled "Method For Contention Free Traffic Detection."

88.    CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

89.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the

'465 patent.

90.     The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

91.     The written description of the '465 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

92.     For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all."  '465 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outermost headers, until the right field in the header had been found.  *Id.* at col. 1:53-59.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 1:62-65.  All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 1:66-2:4.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP).  *Id.*  Further, then-existing systems according to the IEEE 802.11 standard did not separate traffic based on priority.  *Id.* at col. 2:11-15.

93.     The invention of the '465 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need for complex processing making it possible to execute the method in a low cost and possibly low performance AP. *Id.* at col. 2:19-23, 2:60-62, 3:43. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:53-56. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need for a complex structure of the device. *Id.* at col. 2:63-66, col. 3:5-11. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:12-21.

94.     Defendant has directly infringed one or more claims of the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Wi-Fi Multimedia Accused Products identified above.

95.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent, as detailed in <u>Exhibit F</u> to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,027,465).

96.     Defendant, using the Wi-Fi Multimedia Accused Products, has infringed one or more claims of the '465 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia

and/or 802.11-2007+ compatible chips and devices, such as, for example, the Realtek Wi-Fi Multimedia Products.

97.    For example, as detailed in Exhibit F, Defendant has infringed at least claim 1 of the '465 patent by performing a method for detecting priority of data frames in a network. The method for detecting priority of data frames comprises the step of extracting a bit pattern from a predetermined position in a frame. *Id.* The method for detecting priority of data frames further comprises the step of comparing said extracted bit pattern with a search pattern. *Id.* The method for detecting priority of data frames further comprises the step of identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern. *Id.* In the method for detecting priority of data frames, the predetermined position in said frame is defined by the offset of said bit pattern in said frame. *Id.*

98.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 6,891,807

99.    CommWorks repeats and re-alleges the allegations in paragraphs 1-98 above as though fully set forth in their entirety.

100.    For purposes of this Count VII, the Accused Products are the WPS Accused Products identified in Count II.

101.    The USPTO duly issued U.S. Patent No. 6,891,807 (the "'807 patent") on May 10, 2005, after full and fair examination of Application No. 10/341,847 which was filed on January 13, 2003. The '807 patent is entitled "Time Based Wireless Access Provisioning."

102.    CommWorks owns all substantial rights, interest, and title in and to the '807 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

103.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '807 patent.

104.    The claims of the '807 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

105.    The written description of the '807 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

106.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then-existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '807 patent at col. 3:5-18.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically

proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:19-28.

107.    The invention of the '807 patent improved upon then-existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:29-33.  The invention of the '807 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:34-41.  The invention of the '807 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:42-50.  Moreover, the structure of the devices described in the '807 patent was not conventional at the time of the invention.   Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

108.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 17 of the '807 patent, as detailed in Exhibit G to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,891,807).

109.    On information and belief, Defendant has infringed one or more claims of the '807 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making,

using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible consumer electronics chips, such as the Realtek WPS Products.

110.    For example, as detailed in Exhibit G, Defendant has infringed at least claim 17 of the '807 patent by making, using, offering to sell, selling, and/or importing the WPS Accused Products, which include a time based network access provisioning system between a wireless device and a network.  The time based network access provisioning system comprises a network access point connected to the network, the network access point comprising logic for tracking operation of the wireless device.  *Id.*  The time based network access provisioning system further comprises logic for provisioning the wireless device if the operation of the wireless device occurs within an activatable time interval.  *Id.*

111.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 9,554,304

112.    CommWorks repeats and re-alleges the allegations in paragraphs 1-111 above as though fully set forth in their entirety.

113.    For purposes of this Count VIII, the Accused Products are Realtek chips, SoCs, and/or devices supporting Wi-Fi Mesh functionality (the "Wi-Fi Mesh Accused Products").

114.    The USPTO duly issued U.S. Patent No. 9,554,304 (the "'304 patent") on January 24, 2017, after full and fair examination of Application No. 14/090,760, which was filed on November 26, 2013.  The '304 patent is entitled "Scalable Media Access Control for Multi-Hop High Bandwidth Communications."

115.    CommWorks owns all substantial rights, interest, and title in and to the '304 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

116.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '304 patent.

117.    The claims of the '304 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

118.    The written description of the '304 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

119.    For example, at the time of the invention, wireless communications and scalable medium access control ("MAC") modules for use in multi-hop wireless network communications over high bandwidth network communication channels were impractical.  Existing technologies could only be carried out locally and failed to account for end-to-end resource allocation. '304 patent, at 1:62-67; 3:7-9.  This led to a significant increase in communication errors because the routing protocols unknowingly selected routing paths without enough resources.  *Id.* at 3:9-15.

120.    The invention of the '304 patent improved upon conventional MACs by providing wireless network meshes that avoided conflict resource reservation to prevent degradation of

network performance as the number of hops or nodes increased in the network. *Id.* at 3:19-22. This resource allocation is also performed together with routing to achieve layer-2 routing within the MAC protocol to ensure optimal performance in both routing and the MAC layer. *Id.* at 3:36-40. Further, these meshes allowed the MAC to be compliant with both WiMedia MAC and IEEE 802.15.3 MAC, for seamless integration in the industry. *Id.* at 3:30-33.

121.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '304 patent, as detailed in <u>Exhibit H</u> to this Complaint (Evidence of Use Regarding U.S. Patent No. 9,554,304).

122.    On information and belief, Defendant has infringed one or more claims of the '304 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States devices supporting Wi-Fi Mesh functionality, such as the Wi-Fi Mesh Accused Products.

123.    For example, as detailed in <u>Exhibit H</u>, Defendant, using the Wi-Fi Mesh Accused Products, has infringed at least claim 1 of the '304 patent by making, using, offering to sell, selling, and/or importing the Wi-Fi Mesh Accused Products, which perform a method comprising receiving a beacon signal from a wireless communication network, wherein the beacon signal includes information about a sender node and network synchronization information. The receiving a beacon signal process comprises adding the sender node to a neighbor list. *Id.* The receiving a beacon signal process further comprises determining a signal quality for the beacon signal from the sender node. *Id.* The receiving a beacon signal process further comprises establishing a wireless communication link with the sender node if the determined signal quality meets a predetermined threshold quality level. *Id.*

124.    CommWorks has been damaged as a result of the infringing conduct by Defendant

COMPLAINT FOR PATENT INFRINGEMENT
E.D. Tex. No. 2:26-cv-00088 - Page | 33

alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

125.    CommWorks hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

126.    CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

b.    Judgment that Defendant accounts for and pays to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

c.    Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.    That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

e.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>February 2, 2026</u>          Respectfully submitted,

By:<u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1001 Bannock Street, Suite 241
Denver, Colorado 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

*Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC*

* Admitted to the Eastern District of Texas

**List of Exhibits**
   A.  Evidence of Use Regarding U.S. Patent No. 6,832,249
       a.   Exhibits A-1, A-2
   B.  Evidence of Use Regarding U.S. Patent No. 7,177,285
   C.  Evidence of Use Regarding U.S. Patent No. 7,463,596
   D.  Evidence of Use Regarding U.S. Patent No. 7,911,979
   E.  Evidence of Use Regarding U.S. Patent No. RE44,904
   F.  Evidence of Use Regarding U.S. Patent No. 7,027,465
   G.  Evidence of Use Regarding U.S. Patent No. 6,891,807
   H.  Evidence of Use Regarding U.S. Patent No. 9,554,304

**Attachments**
- Civil Cover Sheet
- Proposed Summons